UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                  :

JANNINE BLASH,
                                                                  :

           Plaintiff,                                OPINION & ORDER
                                                                  :

       -against-                               18 Civ. 2288 (GWG)
                                                                  :

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,                                      :

           Defendant.                         :
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Jannine Blash brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act (the "Act"). Blash moves the Court to set aside the decision below or for remand. The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, the Commissioner's motion is granted.

I. BACKGROUND

      A. Procedural History

      Blash filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 18, 2014, alleging a disability onset date of August 1, 2012. See Certified Administrative Record, filed June 17, 2018 (Docket # 10) ("R."), 112-13, 188, 195.

---

[1] See Memorandum of Law in Support of Motion to Set Aside the Administrative Decision or for Remand, filed Oct. 16, 2018 (Docket # 17) ("Pl. Mem."); Notice of Cross-Motion, filed Oct. 23, 2018 (Docket # 18); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed Oct. 23, 2018 (Docket # 19) ("Def. Mem.").

The Social Security Administration ("SSA") denied Blash's applications on September 3, 2014. R. 115-22. Blash requested a hearing before an administrative law judge ("ALJ") to review the denial, R. 160, which occurred on June 6, 2016, R. 67-83. In a written decision dated April 26, 2017, the ALJ found that Blash was not disabled within the meaning of the Act. R. 41-42. Blash requested that the Appeals Council review the ALJ's decision, R. 186, but on January 17, 2018, the Appeals Council denied Blash's request, R. 1-6. Blash timely filed this action on March 14, 2018. See Complaint (Docket # 1).

    B.  The Hearing Before the ALJ

Blash was represented by her attorney, Roland Nemes of Bronx Legal Services, at the hearing before the ALJ on June 6, 2016. R. 67. Blash testified at the hearing. R. 69-83. A vocational expert ("VE") was to attend the hearing but was unavailable. R. 82-83. At the hearing, Blash, though her attorney, amended her alleged onset date to April 18, 2014. R. 69; see R. 26.

Blash testified that she was born in 1969, is single, and has two adult children, one of whom she lives with in her eleventh-floor Bronx apartment. R. 70. She uses the stairs when the elevator in her apartment building is not working. R. 70. Blash does not drive and takes public transportation. R. 70-71.

Blash worked prior to 2000, and then again between 2003 and 2006. R. 71. Her most recent work included clerical work, receptionist-type work, temporary jobs, and work as a full-time home health aide. R. 71-72. As a home health aide, Blash's duties consisted of helping her homebound client dress, preparing the client's meals, cleaning, and taking the client to appointments. R. 73. This job involved "a combination of a lot of standing and lifting." R. 73. In 2012 or 2013, Blash was forced to stop working due to pain resulting from gynecological

2

issues. R. 73-74. Although she eventually had surgery as a result of these issues, R. 73-74, Blash has continued to experience pain due to pancreatitis, which is somewhat relieved by medication, R. 74. She also uses a heating pad for her stomach and back pain. R. 75. The pain Blash experiences as a result of the pancreatitis is sometimes so severe that she cannot get out of bed for a week at a time, though these episodes take place only "three or four times in a year." R. 76.

Blash also testified that she has an asthma condition, whose symptoms are managed by use of an inhaler, a nebulizer (with abuterol sulfate), a steroid in the form of Symbicort, and the drug Spiriva. R. 75. Due to her asthma, she finds it increasingly more difficult to "walk long distances without getting winded" or "running out of breath." R. 76. She can walk only two blocks at a time, and tries to avoid walking at all. R. 76. Though she has difficulties walking, Blash has no problem sitting. R. 76. She cannot "carry too much," because of the resulting pain in her abdomen. R. 77.

Blash also answered questions from the ALJ regarding her psychiatric condition. She testified that her depression "affects [her] a lot," and that she has been on several different medications with increasing dosages. R. 77. Blash also takes medication to help her sleep at night. R. 77. Without the medication, however, she has "racing thoughts" at times and cannot settle herself down enough to fall asleep. R. 78. Being around new people makes her anxious, and riding the subway has become "increasingly difficult" because of her fear of large crowds and because of the violence that occurs in the city. R. 78. For that reason, and because she is also claustrophobic — she does not "like being under the [subway] tunnel" — Blash takes the bus whenever possible. R. 78-79. She also has had a reduced appetite, which is associated with depression, and difficulty concentrating. R. 79.

On a typical day, if she does not have "an appointment," Blash spends her day "stuck in the house" and does not want to get out of bed. R. 79. Because her daughter is a full-time college student, there is no one to help with daily chores. R. 79. Still, Blash prepares her own food and does some cleaning, though not as much as she did before the onset of her current impairments and resulting pain. R. 79. While Blash does have phone contact with her son, she does not keep in touch with other family, friends, or neighbors. R. 80. She has no hobbies or activities for which she must leave the house. R. 80. She stated that she was seeing a psychiatrist and a therapist, had started out with drugs such as Zoloft, and at the time was on "a generic form of Wellbutrin." R. 80. Blash testified that she was seeing a psychiatrist once a month, and that while she used to see her therapist twice a week, she was currently being introduced to a new therapist with whom she was meeting weekly. R. 81. In response to the ALJ's questioning, Blash stated that the therapy sessions "are rough . . . because [the sessions] start touching on a lot of things that I don't really want to deal with." R. 81. In response to additional questions from her attorney, Blash stated that she usually sleeps 10 to 12 hours each night, and increasingly finds herself napping throughout the day. R. 81-82.

At the end of the testimony, the ALJ noted that the VE who was supposed to testify at the hearing was not present. R. 82. The ALJ explained to Blash that the VE "can testify to work that you did in the past, and work that's available in the national economy." R. 82. The ALJ stated that a VE is not always necessary in social security cases, and that if one was necessary in Blash's case, "we would probably do that by writing since we didn't have them here." R. 82. Thus, the ALJ explained, any VE testimony in Blash's case would be offered through written interrogatory; after having a chance to review the written testimony, Blash would have an opportunity to request a supplemental hearing. R. 82. Finally, the ALJ stated that the record

4

would be held open for a "couple of weeks in order to get the updated medical records."  R. 82-83.

    C.  <u>The Vocational Experts' Written Testimony</u>

On November 1, 2016, the ALJ wrote to VE Yaakov Taitz ("VE Taitz") in connection with Blash's pending case, asking him to complete a set of interrogatories based on the evidence in Blash's case.  R. 289-93.  On November 7, 2016, VE Taitz returned the completed interrogatories.  R. 296-99.  Among the interrogatories was a hypothetical question, which asked VE Taitz to assume a hypothetical individual who has the residual functional capacity to perform "medium work . . . with only occasional exposure to dust, odors, fumes and other pulmonary irritants."  R. 297.  Based on this, VE Taitz found that such an individual would not be able to perform any of Blash's past jobs of home aide, receptionist, or secretary.  R. 296-97.  However, VE Taitz found that such a hypothetical individual could perform three unskilled occupations with jobs that exist in the national economy.  R. 298.  These were: hand packager, machine packager, and warehouse worker, all medium, unskilled jobs.  R. 298.  Blash, through her attorney, objected to the interrogatory responses for two reasons.  R. 303-04.  First, because the occupation of hand packager requires "frequent exposure to atmospheric conditions," the determination that Blash could perform such a job was in conflict with the hypothetical posed to VE Taitz, which asked the VE to assume an individual who could tolerate only "occasional exposure" to pulmonary irritants.  R. 303.  Second, the finding that Blash could perform medium work was "inconsistent with her treatment records and the medical opinion evidence."  R. 303-04.

On December 16, 2016, the ALJ sent a new set of interrogatories with similar instructions to a different VE, Andrew Vaughn ("VE Vaughn").  R. 307-11.  Notably, the ALJ

5

this time asked the VE to assume a hypothetical individual who was limited to <u>sedentary</u> work with the exception that this individual must "<u>avoid all exposure</u> to environmental irritants (gases, odors, etc), extreme cold/heat, wetness/humidity." R. 309 (emphasis in original). On January 23, 2017, VE Vaughn returned the completed interrogatories. R. 314-17. Based on the hypothetical posed by the ALJ, VE Vaughn found that such an individual would not be able to perform any of Blash's past jobs of home health aide, babysitter, receptionist, or general office clerk. R. 314. However, VE Vaughn found that — based on the hypothetical characteristics provided, including that the individual was limited to sedentary work and could not experience exposure to environmental irritants — the individual could perform three unskilled occupations with jobs that exist in the national economy. R. 316. These were: table worker, press operator, and addressing clerk. R. 316. Blash's attorney was notified that Blash could respond to VE Vaughn's interrogatory responses, including by requesting a supplemental hearing. R. 318-19. Blash was sent a copy of this notification. R. 319. No response was made.

  D. <u>The Medical Evidence</u>

  The Commissioner has provided a summary of the medical evidence in the record. <u>See</u> Def. Mem. at 2-12. Blash has not provided such a summary. <u>See</u> Pl. Mem. Additionally, although the Court afforded Blash an opportunity to file a reply to the Commissioner's opposition, <u>see</u> Order, filed Aug. 23, 2018 (Docket # 13), Blash did not file a reply, and thus we view Blash as accepting the factual summary of the record as stated in the Commissioner's brief. We discuss the medical evidence as needed in Section III below.

  E. <u>The ALJ's Decision</u>

  The ALJ denied Blash's DIB and SSI applications on April 26, 2017. R. 26-42. Regarding the DIB application, the ALJ found that Blash met the insured status requirements of

the SSA though December 31, 2017.  R. 28.  Then, following the five-step test set forth in SSA regulations, the ALJ found at step one that Blash had not engaged in "substantial gainful activity" during the time between her alleged disability onset date — April 18, 2014 — and the date of the decision (the "Relevant Period").  R. 28-29.  At step two, the ALJ found that during the Relevant Period, Blash suffered from "severe impairments" of "asthma, pancreatitis, [and] major depressive disorder."  R. 29.

At step three, the ALJ found that none of Blash's impairments singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  R. 29-31.  The ALJ gave particular attention to listings 3.03, 5.08, and 12.04, which address asthma, weight loss due to any digestive disorder, and depressive, bipolar and related disorders, respectively.  R. 29.  The ALJ noted that Blash, through her attorney, "[did] not contend that a listing has been met or equaled," nor did any "treating or examining physician . . . mention[] any findings equivalent in severity to any listed impairment," nor were "such findings indicated or suggested by the medical evidence of record."  R. 29.  Nevertheless, the ALJ considered in detail the specific requirements of these listings, finding that they were not supported by the medical evidence in Blash's case.  See R. 29-31.

Having found that Blash could not meet listings 3.03, 5.08, and 12.04, the ALJ next addressed Blash's residual functional capacity ("RFC").  The ALJ found that Blash had the RFC "to perform sedentary work," except that Blash could "occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, can frequently balance, stoop, crouch, kneel, and crawl, must avoid all exposure to environmental irritants such as gases and odors, extreme heat/cold, wetness/humidity, and must avoid concentrated exposure to unprotected heights, use of hazardous machinery, and excessive vibration."  R. 31.  The ALJ also found that Blash "is

7

further limited to simple, routine tasks with only occasional decision making required, occasional changes in the work setting, and occasional interaction with the public, coworkers, and supervision." R. 31. In making this assessment, the ALJ reviewed the medical record, including the opinions of all consulting, examining, and treating medical sources, as well as Blash's testimony, finding her testimony to be "not entirely consistent with the medical evidence and other evidence in the record." R. 33; see R. 32-40.

Having determined Blash's RFC, the ALJ evaluated at step four whether Blash could continue her past work as a home health aide, a babysitter, a receptionist, and a general office clerk, and concluded that she could not. R. 40. At step five, the ALJ considered Blash's RFC and her age, education, and work experience in determining that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 41. Thus, although the ALJ found that Blash's "ability to perform all or substantially all of the requirements of [a level of sedentary] work has been impeded by additional limitations," given all the evidence in the record including the post-hearing interrogatories, the ALJ found that Blash "would be able to perform the requirements of representative occupations such as: - table worker (DOT 739.687-182) – 420,000 jobs in the national economy; - press operator (DOT 715.685-050) – 168,000 jobs in the national economy; - addressing clerk (DOT 209.587-010) – 62,000 jobs in the national economy." R. 41. The ALJ found this testimony to be consistent with the Dictionary of Occupational Titles, and concluded that Blash was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 41. Accordingly, the ALJ concluded that Blash had not been under a disability, as defined in the SSA, during the Relevant Period. R. 41-42.

II. GOVERNING STANDARDS OF LAW

    A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

It is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, a court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). The "threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld,

even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).

    B.  <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she

11

will be deemed disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

It is not clear what arguments Blash is making.  This is because her brief relies essentially on objections by prior counsel that were ultimately addressed in the ALJ's decision.  These objections are to the initial set of questions sent to the first vocational expert, that is, VE Taitz, relating to (1) non-exertional limitations, and (2) the assumption that Blash could do "medium work."  See Pl. Mem at 4-6.

It is true that in his written hypothetical from November 2016, the ALJ instructed the first VE, VE Taitz, to assume an individual who has the RFC to perform "medium work . . . with only occasional exposure to dust, odors, fumes and other pulmonary irritants."  R. 297.  Based on this, VE Taitz found that the hypothetical individual could perform certain occupations with jobs that exist in the national economy, including hand packager.  R. 298.  Blash objected to this testimony because the occupation of hand packager requires "frequent exposure to atmospheric conditions."  R. 303.  She also objected because the hypothetical assumed that Blash could do "medium work."  R. 303.

But the ALJ did not rely on VE Taitz's testimony.  Instead, after Blash's attorney made the objection, the ALJ sent a new set of interrogatories to VE Vaughn.  R. 307-11.  Critically, the ALJ this time asked the VE to assume a hypothetical individual who was limited to <u>sedentary</u> work and added the exception that this individual must "<u>avoid all exposure</u> to environmental irritants (gases, odors, etc), extreme cold/heat, wetness/humidity."  R. 309 (emphasis in original).  VE Vaughn then returned his response, finding that — while such a hypothetical individual

would not be able to perform any of Blash's past jobs, R. 316 — the hypothetical individual could perform three unskilled occupations with jobs that exist in the national economy, R. 316. The ALJ explicitly stated that he was relying on VE Vaughn's testimony. See R. 41 (citing Exhibit 17E, Response to Vocational Interrogatory, dated 01/23/2017, from Andrew Vaughn).

At step five, in a finding that is not challenged, the ALJ found that Blash could perform only "sedentary," not "medium," work. R. 41. Additionally, the ALJ found that Blash's "ability to perform all or substantially all of the requirements of this level of [sedentary] work has been impeded by additional limitations," R. 41 — that, for instance, Blash "must avoid all exposure to environmental irritants such as gases and odors, extreme heat/cold, wetness/humidity," R. 31, and that she "is further limited to simple, routine tasks with only occasional decision making required, occasional changes in the work setting, and occasional interaction with the public, coworkers, and supervision," R. 31. In other words, the ALJ determined that Blash did not have the RFC to perform a full range of sedentary work, taking into account "the extent to which these limitations erode the unskilled sedentary occupational base." R. 41. As is required, the ALJ also took into consideration Blash's "age, education, work experience, and [RFC]" in making his decision. R. 41.

Blash makes no argument that substantial evidence does not support the RFC as found by the ALJ and as posed to VE Vaughn. Thus, the ALJ properly relied on VE Vaughn's responses. See generally McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion.'") (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

In sum, Blash has not pointed to any reason why the ALJ could properly conclude that

Blash could not perform certain nationally available jobs and was disabled under the SSA. See 42 U.S.C. §§ 216(i), 223(d) and 1614(a)(3)(A).

IV. CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Docket # 18) is granted.

SO ORDERED.

Dated: New York, New York
May 20, 2019

GABRIEL W. GORENSTEIN
United States Magistrate Judge